SAINT LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* WILLIAM A. ROANE, ADMINISTRATOR.

[46 South., 711.]

RAILROADS. *Carriers. Passengers. Ejection. Epidemics. Quarantine officers. Damages. Exemplary damages. Excessive damages.*

Where, during a yellow fever epidemic, two boys, suffering from consumption from which one of them shortly afterwards died, were passengers on defendant's railroad train, having certificates that they had not been exposed to the fever and tickets for transportation to a point on another line of railroad, their transfer from one train to the other having been arranged with and consented to by the quarantine authorities of the junction city, were ejected from the train before reaching that city by a quarantine officer thereof, the conductor not protesting but stopping the train for the purpose, in ignorance of the fact that the passengers had a permit to be transferred from his train to the other, and they being too weak from disease to protest:

    (*a*) The boys were entitled to protection by the railroad company and the conductor should not have allowed them to be put off

the train, and the administrator of the decedent was entitled to recover compensatory damages for his ejection; but

(b) Punitive or exemplary damages were not recoverable in the case; and

(c) The boys having been delayed only thirty-six hours in reaching their destination, a verdict for $7,500 was excessive and no greater sum than $2,500 should be allowed.

FROM the circuit court of Marshall county.

HON. J. B. BOOTHE, Judge.

Roane, appellee, administrator of the estate of Archibald C. Roane, deceased, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment for seven thousand five hundred dollars in plaintiff's favor defendant appealed to the supreme court.

Archibald C. Roane, age eighteen years, and his brother Ralph Roane, age twenty-two years, were returning from the West, where they had been in search of health; both being in the last stages of consumption. At the time at which this action arose there was a yellow fever epidemic in parts of Mississippi and Louisiana, and in order to travel in most of the Southern states it was necessary to have health certificates. Both boys had health certificates, showing that they had not been in infected territory, and were admitted upon them into the city of Memphis, Tenn. There they purchased through tickets from Memphis to Oxford, Miss., by way of Holly Springs, Miss., where it was necessary to change cars. Arrangements had been made with the city authorities and health officers of Holly Springs for the boys to leave defendant's train at that place and change to the cars of another company for Oxford, where arrangements had also been made for their reception. The defendant's ticket agent at Memphis examined their health certificates and sold them through tickets to Oxford. They boarded the train of the appellant railroad company at Memphis, but before they had proceeded more than a mile from the station they were approached by a man who claimed to be a quarantine officer of the city of Holly Springs and told to get off the train. The train stopped, and they were

assisted off, and boarded an electric car, and went back into Memphis, where they found an uncle who got them quarters in an hotel.    After waiting in Memphis about thirty-six hours, they went by another route to Grenada, Miss., and thence to Oxford.    Archibald C. Roane died two or three days after arriving at Oxford, and his brother lived a month or so.    Ralph Roane testified, before he died, that, when he and his brother boarded the train, their tickets and health certificates were exhibited to the conductor and other officers of the train and that they were allowed to get aboard; that the conductor was present at the time they were put off the train by the quarantine officer; that no explanation was made to them, nor were they given an opportunity to make any explanation themselves; that they were both too weak and exhausted to protest, so weak, in fact, that they could hardly speak and make themselves understood; that when they were told to get off and "take another car" they did not realize what was meant until, after getting off of the train, they saw the electric car on the track and realized that they had been ejected from appellant's train; that they were so weak and exhausted as to be almost helpless, and witness was afraid he would not get his brother Archibald home before he died; and they were both greatly frightened, and suffered great physical and mental anguish.

The defendant insisted that the quarantine officer of the city of Holly Springs was acting under an ordinance of that city forbidding persons getting off of trains at that place without health certificates from the health authorities of Holly Springs, and that the conductor of the railroad company had no knowledge of the fact that arrangements had been made for the young men to pass through and change cars at Holly Springs, and that the railroad company was, therefore, not liable.

*J. W. Buchanan,* for appellant.

In *Alabama, etc., Railroad Co., v. Hayne,* 76 Miss., 538, 24 South., 907, an action to recover damages for delay in shipment

of cotton where the defense was that the delay was caused by the enforcement of a quarantine regulation, the opinion of the court was based on the proposition that this defense was sufficient, whether the quarantine was legally declared or whether it was merely one made by force.

The Mississippi quarantine officer in the case at bar, in performing his functions upon the train of the defendant at Memphis, did so in order to avoid inconvenience, trouble and delay to passengers by having them keep off the train or leave the train at Memphis, so that they would be saved the time of making a trip to Holly Springs and being compelled to return without being allowed to pass from one depot to another in the city. It is the common practice of municipal or state quarantine offices to work in this fashion outside of their state, particularly at large cities or towns from which people travel in large numbers, and which are centers of transportation.

In *Minneapolis, St. Paul & Sault Sainte Marie Ry. Co.* v. *Milner,* 57 Fed., 276, certain health officers of the state of Michigan acting under a statute passed by that state for the purpose, examined passengers upon the Canadian Pacific trains on the Canada side of the Sault Sainte Marie and detained them where the provision of the statute required the detention. The plaintiff railroad company brought an injunction suit to restrain these health officers from this inspection and detention of passengers who were immigrants from European countries, and who were going into the United States. The court refused to grant the injunction. The fact that the examination and detention were had outside of the limits of Michigan was treated in the case as immaterial. The court said "the inconvenience resulting to immigrants and travelers from being halted and subjected to examination and detention at state lines is of trifling importance at a time when every effort is required and is being put forth to prevent the introduction and spread of pestilential and communicable diseases."

In the yellow fever epidemics which have occurred in the past throughout the Southern states, quarantine obstructions to travel have been frequent, and often have not been supported by any statute or ordinance, but have been improvised to meet pressing and dangerous exigencies. It is evident that the opinion of the bar has been that these quarantine obstructions to travel have been justified, for there are very few cases to be found in the reports brought to recover damages caused by interference with travel by quarantine guards.

This was certainly not a case for exemplary damages. Under the facts the verdict of the jury was so excessive that no reasonable man, without prejudice or passion, will say that this verdict, upon the facts and law charged by the court, is reasonable.

This court has reversed a number of cases, or required a remittitur of the verdict, where, under the facts, they were excessive.

In the case of *Ry. Co.* v. *Purnell,* 69 Miss., 652, 13 South., 472, in case of a wreck, where a lady and her children had to walk one hundred yards and she was left, and having sued the company got a verdict for $500, this court reversed the judgment and remanded the case because it was excessive, and said that she ought to have been restricted to compensatory damages.

The case of *Railroad Co.* v. *Scurr,* 59 Miss., 456, lays down the proper rule, drawing the distinction between compensatory and exemplary damages.

In the case of *Carver* v. *City of Jackson,* 82 Miss., 583, 35 South., 157, this court ordered the plaintiff to remit $2,000, otherwise the judgment would be reversed. This was a case where an old lady was attempting to cross a street over a defective crossing, neglected by the city, and the old lady being about sixty-odd years old, the jury gave her a verdict for $4,000. This court said:

"From a careful consideration of this record we are forced to

the conclusion that the jury allowed a feeling of sympathy for an aged and dependent woman to lead them into awarding more than strictly compensatory damages, which the law warrants."

In *Illinois Central Railroad Co.* v. *Pearson*, 80 Miss., 26, 31 South., 435, a verdict was rendered and judgment entered for $400, for four days delay, caused by a wash-out. The verdict was set aside as excessive.

In the case of *Yazoo, etc., Railroad Co.* v. *Faust* (Miss.), 34 South., 356, the train failed to stop and take plaintiff from the station, and as a result, she was compelled to walk home about three miles in the rain and cold, which made her sick, and she was unable to sit up for six weeks. A verdict of $3,333 was required to be remitted to $2,000.

In *Zion* v. *Southern Pacific Railroad Co.*, 67 Fed. 500, a passenger was ejected under humiliating circumstances, and a verdict was rendered for $1,700. The court required this to be remitted to $850. There is in this case a full and clear discussion of the principles involved where excessive verdicts are rendered in passenger ejection cases, and many authorities are cited, sustaining the action of the court in requiring a remittitur.

In *Gulf, Colorado & Santa Fe Railroad Co.* v. *Russell* (Tex.), 85 S. W., 299, a passenger was wrongfully ejected at night one and one half miles from a station. He was afflicted with rheumatism and suffered from rheumatic pains while walking to town, and thereafter. A verdict for $400 was held excessive and the court required it to be remitted to $200.

In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Linam*, 68 Ark., 621, 60 S. W., 951, a quarantine was in force at and around Arkansas City, Ark., supported by a quarantine guard. The plaintiff sued for being compelled to leave the train at a junction point some distance before reaching the quarantine guard. No money damages were shown. A verdict was returned in favor of plaintiff for $100, which the court set aside

as excessive.   The court said "The question in this case is
whether plaintiff was put off the train by the conductor, or
got off voluntarily, rather than go on further to a point within
two miles of Arkansas City, and there encounter a quarantine
guard acting under rigid orders, as he had been informed, and
be put off in a desolate swamp without accommodations or con-
venience of any kind.   There is evidence tending to support
the latter view of the question.   Be this as it may, however,
the evidence shows that plaintiff suffered no damages whatever
in being put off the cars, if that was the case, and at furtherest
he was entitled to nominal damage only if any."

*C. L. Sivley* and *James Stone,* for appellee.

The only excuse offered by appellant for the perpetration of
this great injury upon this young man is the pretended quar-
antine restrictions which existed at the time in the town of
Holly Springs, and especially that portion of it which required
a written permit before any one was authorized to enter the
sacred precincts of this municipality.

The general authority for establishing quarantines in Miss-
issippi under the Code of 1892 was that especially provided for
by section 2278 as amended by Laws of 1898, p. 93.   Under
sec. 9 of this last act, railroad traffic is placed exclusively in
the hands of the state board of health and it is not contended
by appellants that any rule of that board justified the action
here complained of.   Municipalities were empowered, under
section 2950 of the Code of 1892, to pass and enforce reason-
able quarantine ordinances and if they deemed it necessary, to
extend temporarily the limits of the municipality five miles.
This, however, was not done by the town of Holly Springs, and
the ordinance which appears in the record was intended only
to cover the corporate limits of the town.

While it is true, as a general proposition of law, that a car-
rier can defend an action brought against it by a passenger for
failure to deliver him at his destination, upon the ground that

such delivery would be a breach of quarantine regulations in force at that time, when a railroad company refuses to carry a passenger because of the quarantine restrictions, either municipal or state, the company takes the chance and runs the risk of acting under void ordinances. It must be sure, (1st) that such quarantine regulation exists, and (2nd) that the ordinance, if any exists, is not void because of its unreasonableness.

The final test to which all extraordinary ordinances, with reference to quarantine restrictions, are put is to determine the reasonableness of such provision. The pretended ordinance found in this record is upon its face void. In fact, it was so apparently unreasonable that when a prosecution was attempted under the terms of this ordinance before the mayor of Holly Springs, he declared the ordinance void and discharged the defendant, as shown by testimony of Matthews, a witness offered by appellants. We recognize, of course, that this would not be binding authority upon this court, but it is a circumstance to show how palpably unreasonable were the terms of this quarantine restriction, when judicially construed even by one who was a moving spirit in its enactment.

Code 1892, § 2278, as amended by the laws of 1898, p. 93, emphatically declares that all quarantine regulations must be reasonable, and this court, in no unmistakable terms, announced this to be the correct rule in construing quarantine regulations. *Kosciusko* v. *Slomberg,* 68 Miss., 469, 9 South., 297; *Wilson* v. *Railroad Co.,* 77 Miss., 714, 28 South., 567; *St. Clair* v. *Railroad Co.,* 76 Miss., 473, 24 South., 904.

This seems to be the general holding of all the courts upon ordinances of this nature, as shown by the following authorities: *Marcum* v. *Brown,* 92 Am. Dec., 76, 80 and note; *In re Smith,* 146 N. Y., 68, 48 Am. St. Rep., 769 and note on page 774; 28 L. R. A., 820; *Wilson* v. *Railroad Co.,* 78 Am. St. Rep., 545 and note; *Railroad Co.* v. *Masterson* (Texas, 1902), 66 S. W., 833; *Hurst* v. *Warren,* 26 L. R. A., 484 and elaborate note.

The following authorities clearly define the powers which boards of health can exercise in cases of epidemics: *Thomas v. Mason,* 26 L. R. A., 727; *Brue v. Beech,* 50 L. R. A. 64.

Viewed in the light of these authorities it is manifest that if the ordinances, under which appellants seek to take refuge, were ever passed by the authorities of Holly Springs, they were void and absolutely nonenforcible.

It is manifest that the pretended health officer had no jurisdiction in the state of Tennessee, some forty-five miles from the town of Holly Springs, Mississippi. As far as the testimony in this record shows, this man Macklin had no power of any kind for he did not claim to have any authority to regulate things at Holly Springs and his official position was so uncertain that the local authorities at Holly Springs refused to allow him to get off the train.

This court has said in the case of *Wilson v. Railroad Co., supra,* that there was no excuse for putting a man off outside of the state of Mississippi, and that it was the duty of the railroad company to take a man, who held a ticket, to his destination, whether he was allowed to get off there or not. It is true that the court said in this case that it was not incumbent upon the railroad company to override force in order to deliver a passenger at his destination, but certainly there would be no warrant under the sun for ejecting a passenger forty-five miles away from the limitation of the quarantine restrictions.

Archibald C. Roane was a passenger on appellant's train; had paid full fare; was permitted to board the train by the health officer and servants of the railroad company; had explained to the ticket agent, the representative of appellant, who entered into the contract of carriage, that he would have no trouble in transferring at Holly Springs. He had perfectly good health certificates and a ticket entitling him to ride to Holly Springs. Without excuse or explanation, he was bundled up and put off the train in the presence of other passengers and when he was physically unable to resist any force to protect himself against

the unwarranted treatment of the railroad company's representatives, at a place where no convenience or comfort had been made to take care of this young man, who was tottering upon the brink of the grave, with no one to assist and care for him except a brother, who was in almost as helpless and hopeless condition.  The situation was so apparent to this hard hearted and pretended health officer that he did not expect him to live an hour.

To subject a passenger to such cruel and inhuman treatment is not only violative of the law of the land, but is shocking and most revolting to the sensibilities of all men.

Such conduct has been repeatedly condemned by this court as evidenced by the following authorities: *Railroad Co.* v. *Riley,* 68 Miss., 765, 9 South., 443; *Railroad Co.* v. *Holmes,* 75 Miss., 371, 23 South., 187; *Railroad Co.* v. *Drummond,* 73 Miss., 813, 20 South., 7; *Railroad Co.* v. *Harper,* 83 Miss., 560, 35 South., 764.

It cannot be denied that these young gentlemen suffered physical injury and hurt as a result of the gross negligence and unwarranted conduct of the train crew, which amount to wilful wrong and oppression and ought to warrant the recovery of punitive damages.  See authorities just cited and *Railroad Co.* v. *Mattingly,* 37 South., 708; *Southern Traction Co.* v. *Compton,* 38 South., 629; *Railroad Co.* v. *Marlett,* 78 Miss., 872, 29 South., 62; *Railroad Co.* v. *White,* 82 Miss., 120, 33 South., 970; *Western Union, etc., Co.* v. *Watson,* 82 Miss., 101, 33 South., 76.  Appellee had a right under his contract with the railroad company, as shown by his ticket, to be carried to Holly Springs if he wanted to take chances on being allowed to transfer there.

That this right of carriage was agreed to and the consideration paid is not denied.  *Wells* v. *Railroad Co.,* 67 Miss., 24, 6 South., 737; *Railroad Co.* v. *Harris,* 81 Miss., 208, 32 South., 309.

We contend therefore, that the only error that could have

possibly been made in the trial of this cause in the court below was the failure of appellee to ask for punitive damages, because the record in the case shows such a flagrant disregard of the rights of appellee that punishment should have been visited upon appellants.

Argued orally by *J. W. Buchanan,* for appellant, and by *C. L. Sivley,* for appellee.

MAYES, J., delivered the opinion of the court.

Under the facts disclosed by the record, the railroad company is liable for compensatory damages only. There is nothing in this record which would warrant the imposition of punitive damages. There was no conduct of any of the officers or employees which evinced any wantonness or willful disregard of the rights of the deceased, nor was there any bad faith on the part of the company, but a breach of contract pure and simple. The suit was for $15,000, and the jury awarded $7,500. It is shown that Archibald C. Roane was detained about thirty-six hours. In no view of this case can the judgment be sustained for the amount awarded. Archibald C. Roane was in such physical condition as entitled him to the greatest care and consideration on the part of the company, when it suffered him to be wrongfully put off the train. Under his contract of passage, the law gave him the right to full protection, and the company should not have allowed him to be put off the train; but, under the facts, compensation is the measure of the recoverable amount. Such being in law the measure of his recovery, the awarding of $7,500 by the jury is grossly excessive. It would be a species of grossest injustice to the railroad company to allow this judgment to stand for this amount. Under the facts shown by this record, had the party suffering the damage complained of been in good health and full vigor, we would reduce the judgment to nominal damage; but in view of the enfeebled condition of the deceased, then being in the last stages of consumption, easily exhausted, and almost too weak to stand, not being

able because of this·condition to speak above a whisper, we feel bound to take into consideration these facts in measuring the liability of the company for their breach of duty towards this passenger. It is our opinion that no judgment should be allowed to stand for more than $2,500, and we fix this as the amount of recovery. If the judgment shall be remitted here to this amount, it may be affirmed; if this shall not be done, it is reversed and the cause remanded; but in any event the cost of this appeal must be taxed against the appellee.

*Remittitur entered. and affirmed.*